IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAROL L. STARNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 1:11CV124-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  Introduction.**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[3] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[3]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th  Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

---

[4]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  The plaintiff was 48 years old at the time of the hearing before the ALJ and has a 12th grade education.  The plaintiff's prior work experience includes work as a caretaker/house cleaner, cashier, stocker, ticket clerk, and a shipper.  Following the administrative hearing, the ALJ concluded that the plaintiff has severe impairments of lumbar hypertrophic facet joints, lumbar degenerative disc disease, obesity, hypertension, diabetes mellitus, asthma, mononeuritis multiplex, sleep apnea, adjustment disorder, and dysthymic disorder.  Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform light work and can return to her past relevant work as a caregiver.

**B.  The Plaintiff's Claims.**  As stated by the plaintiff her claims are (1) the ALJ failed to properly assess Starnes' past relevant work, (2) the ALJ's finding of Starnes' mental impairments at step two and beyond is not based on substantial evidence and (3) the Commissioner erred as a matter of law in failing to properly evaluate Starnes' cataracts.  The court will discuss each of these claims.

### IV.  Discussion

**A. The Past Relevant Work Claim.**  The ALJ found that Ms. Starnes 'is capable of performing past relevant work as a caregiver." (R. 21).  At the hearing before the ALJ, Starnes' counsel told the ALJ that she previously had worked as a "caretaker, cashier, stocker, ticket clerk, and a shipper." (R. at 30)  The plaintiff contends that the ALJ

improperly separated the duties of Ms. Starnes' past work as a "Caretaker/House Cleaner" into two separate jobs: "caregiver" and "housekeeper". (R. 21, 188).

During the hearing before the ALJ, the plaintiff testified that she worked for a health care business. In response to the ALJ's question about what she did, she said, "I took care of a patient. I had to lift her, bathe her, light housekeeping, and that sort of thing." (R. at 35) In his decision the ALJ found that Starnes

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can sit for a total of 4 hours in an 8-hour day and can stand/walk for a total of 8 hours in an 8-hour day. The claimant cannot climb, balance, stoop, kneel, crouch or crawl. The claimant can tolerate only occasional exposure to temperature extremes, dust fumes, gases, and vibrations. The claimant cannot tolerate exposure to dangerous machinery or heights. The claimant cannot tolerate exposure to loud noises such as heavy traffic. The claimant has no visual or auditory limitations. The claimant can frequently understand, remember, and carry out simple one and two-step instructions. The claimant can understand, remember, and carry out detailed instructions no more than occasionally.

(R. at 18)

The plaintiff does not challenge this residual functional capacity determination. As the Commissioner correctly points out, housekeeping is also light work. *See* DOT 323.687-014. Thus, the court agrees with the Commissioner that even if the ALJ erred in bifurcating the plaintiff's past relevant work of caretaker/housekeeper, any error was harmless because the plaintiff had the residual functional capacity to perform both types of work as they generally are performed within the national economy.

**B. The Mental Impairment.** The plaintiff contends that the ALJ improperly

evaluated her mental impairment.  Dr. Ghostley, a psychologist, performed a consultative examination of the plaintiff.  He concluded that "Ms. Starnes' ability to function independently and manage finances is unimpaired. Presently, her ability to understand, remember, and carry out instructions is moderately impaired, while her ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting is markedly impaired." (R. at 353)    The ALJ considered but rejected Dr. Ghostley's opinion.

> Although David C. Ghostley, a licensed clinical psychologist who evaluated the claimant on a consultative basis in September 2009, reported that the claimant's ability to respond appropriately to supervisors, co-workers and work pressures is markedly impaired (Exhibit 7F), Dr. Ghostley's assessment is inconsistent with the claimant's own statements that she gets along with others with no reported problems. Dr. Ghostley's assessment is also inconsistent with Dr. Donald E. Hinton's persuasive assessment in which he opined that the claimant was not significantly limited with respect to social interaction and adaptation (Exhibit 10F).

(R. at 17)

> The ALJ did consider the plaintiff's mental impairments making these findings:
>
> With respect to the claimant's subjective complaints of depression and anxiety, there is no evidence in the record that the claimant sought treatment from a mental health specialist. Rather, the claimant has sought treatment only from her treating physicians, primarily Dr. Mancuso, who specializes in family medicine, not mental health issues. Dr. Mancuso simply prescribed various medications, including Zoloft and Paxil. Dr. Mancuso did not report any functional limitations relating to any mental impairment or refer the claimant to a mental health specialist. Although Dr. Ghostley reported that the claimant's mental prognosis was guarded but was expected to improve with psychotherapy (Exhibit 7F), there is no evidence in the record that the claimant sought treatment from a psychologist or other mental health expert. Finally, although the record shows frequent trips to

> the emergency room in 2008 and 2009 for physical complaints, hospital treatment notes specifically indicate that the claimant's mental status was normal (Exhibits 2F,4F, SF).

(R. at 20-21)

The plaintiff is correct when she observes that the ALJ is not fully correct in saying that she did not seek mental health treatment. Her treating physician is Dr. Mancuso, and his notes from July 28, 2009, reflect that

> "She did go out the Spectra Care on 07/16. Because her husband at that time was still working and his income was such that it was above their level for free care and they told her that the visit would be $71.00. She could not afford that. He apparently is going to be laid off at the end of the month and she will have to wait until he is laid off and retry to get into Spectra Care."

(R. at 385)

Dr. Mancuso diagnosed depression, stating "She is tearful but in no acute distress otherwise." *Id.* On July 22, 2010, Starnes saw Dr. Mancuso who again diagnosed her with "depression of longstanding duration" which was made worse by her mother's recent death and also disagreement with a family member. (R. at 435) Dr. Mancuso stated, "1 advised her to check with Spectra Care again. Apparently, she checked with them previously and based on her husband's income at that time it was too expensive for them to go. However, now they have no income for the moment and she probably could be seen for free or at very minimal charge. She promised me that she would do this." *Id.*

The evidence shows that she did not keep this promise. Thus, the court is unable to fault the ALJ for saying she did not seek out mental health treatment. Coupled with

her statements that she has no difficulty getting along with people,[5] these facts militate strongly against a conclusion that Starnes' depression is disabling.  More to the point, the court concludes that substantial evidence supports the ALJ's conclusion about Starnes' mental abilities. To the extent that her mental condition affects her ability to work, the ALJ adequately accounted for it by noting her limitations in understanding and carrying out instructions.

Starnes also contends that the ALJ erred in giving more weight to the opinion of a non-examining physician, Dr. Hinton, a state agency psychologist who reviewed Starnes' medical records.  As noted above, Dr. Hinton concluded that Starnes was not significantly limited with respect to social interaction and adaptation. (R. at 372) This, of course, is not consistent with Dr. Ghostley's conclusions.

Social Security regulations provide guidelines for an ALJ to use when evaluating medical opinion evidence. See 20 C.F.R. § 404.1527. The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, how supported an opinion is, whether an opinion is consistent with the record, and a doctor's specialization.  20 C.F.R. § 404.1527(d)(1)-(6).  The Commissioner's regulations also require that "more weight [be given] to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not

---

[5] Starnes' responses on a questionnaire concerning "social activities," states that she spends time with others in person and on the phone.  The sole activity described by her is "go[ing] out to lunch."  She says she does this once a week.  She also states that she has no difficulty getting along with "family, friends, neighbors or others." (R. at 165)

examined [the claimant]."   20 C.F.R. § 404.1527(d)(1); *accord Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir.1985); *Swindle v. Sullivan,* 914 F.2d 222, 226 n. 3 (11th Cir.1990).  Moreover, "[t]he opinions of nonexamining, reviewing physicians, ... when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence."  *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988); *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir.1987); *accord Spencer on Behalf of Spencer v. Heckler,* 765 F.2d 1090, 1094 (11th Cir.1985) (" '[t]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at best' ").  In *Edwards v. Sullivan,* 937 F.2d 580, 584-85 (11th Cir.1991), the court found that the ALJ did not err in relying on the opinion of a nonexamining physician where the physician's opinion was consistent with the opinions of examining physicians.

     One of the interpretive difficulties with this seemingly straightforward principle of law arises from cases such as *Swindle v. Sullivan,* 914 F.2d 222, 226 n. 3 (11th Cir. 1990), in which the court stated, albeit in a footnote, that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."   In isolation, *Swindle* seems to suggest that the opinion of a nonexamining physician cannot be substantial evidence under any circumstances.  *Swindle* cites *Broughton* as authority, but that case "held that the opinion of a nonexamining physician is entitled to little weight *if it is contrary to the opinion of*

*the claimant's treating physician.*" *Broughton*, 776 F.2d at 962 (emphasis added).  That formulation of the law is consistent with *Lamb* and *Sharfarz*.  Thus, the court concludes that the opinion of a nonexamining physician who has reviewed medical records may be substantial evidence if it is consistent with the well-supported opinions of examining physicians or other medical evidence in the record.

Here, Dr. Hinton did review the records of the consultant psychologist.  Even though his opinion is not consistent with Dr. Ghostley's opinion that Starnes' ability to respond appropriately to supervisors, co-workers, and work pressures is markedly impaired, the ALJ's opinion nonetheless is consistent with the medical evidence as a whole[6] as well as Starnes' testimony about her abilities.  Starnes did not seek mental health treatment when she could have done so.  While Dr. Mancuso suggested she seek treatment for her depression, he never indicated that it was debilitating.  Starnes' description of her activities does not support a conclusion that she is unable to function in a work setting to the degree determined by Dr. Ghostley during the single examination by him of Starnes.  In short, after a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Starnes' mental impairments.

**C.  Cataracts.**  Starnes complains that even though she presented evidence of

---

[6]For example, Dr. William G. Watson, a neurologist, evaluated Starnes on October 4, 2010, concerning her back pain.  In commenting about her, he stated, "She communicates well." (R. at 416)

cataracts to the ALJ he failed to mention this impairment in his consideration of the medical evidence. Starnes argues in brief that this failure warrants remand because "the job he found that Ms. Starnes could return to requires frequent near acuity. (R. 18, 21)."

This claim is wholly lacking in merit. First, as the Commissioner points out, Starnes did not allege in her application or at the hearing that cataracts was an impairment. Secondly, while the medical records at page 375 of the administrative record has the cataract box marked "yes," the same form on page 376 of the record is marked "no." Thirdly, other than these stray indications, no medical records indicate the presence of any limitations associated with cataracts. The record before the court simply does not support a finding that cataracts impose any limitation on Starnes' ability to work.

## IV. Conclusion

For the reasons as stated, the court concludes that the decision of the Commissioner denying benefits to Starnes should be affirmed. The Court will enter a separate final judgment.

Done this 6th day of July, 2012.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE